UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| WILLIAM A., <br><br> Plaintiff, <br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 5:23-cv-00274-BFM <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.  PROCEDURAL HISTORY

Plaintiff William A.[1] applied for a period of disability and disability insurance benefits and for Supplemental Security Income payments, alleging a disability that commenced on May 10, 2014. (Administrative Record ("AR") 15, 230-34, 236-46.) Plaintiff's applications were denied at the initial level of review and on reconsideration, after which he requested a hearing in front of an Administrative Law Judge. (AR 150-51.) The ALJ held a hearing and heard from

---

[1] In the interest of privacy, this Memorandum Opinion and Order uses only the first name and last initial of the non-governmental party in this case.

1 Plaintiff and a vocational expert (AR 34-65), after which the ALJ issued an
2 unfavorable decision. (AR 15-28.)

3 With respect to Plaintiff's claim for disability insurance benefits, the ALJ
4 found at step two of the disability analysis[2] that from May 10, 2014 (the alleged
5 onset date) through December 31, 2014 (the date last insured), Plaintiff had the
6 severe impairment of left elbow tendonitis. (AR 18.) With respect to his claim
7 for supplemental security income payments, the ALJ found that since August
8 14, 2020 (the application date),[3] Plaintiff has the severe impairments of left
9 elbow tendonitis; osteoarthritis of the right shoulder; bilateral epicondylitis;
10 right ulnar nerve entrapment, status-post cubital tunnel release; cervical spine
11 stenosis; right carpal tunnel syndrome, and status-post carpal tunnel release.
12 (AR 22.)

13 For both claims, at step three the ALJ concluded that that Plaintiff's
14 conditions did not meet or medically equal the severity of any impairment
15 contained in the regulation's Listing of Impairments—impairments that the
16 agency has deemed so severe as to preclude all substantial gainful activity and
17 require a grant of disability benefits. (AR 18, 22); *see* 20 C.F.R. pt. 404, subpt.
18 P, app. 1.

19 Because Plaintiff's impairments were not severe enough to require a grant
20 of benefits at step three, the ALJ proceeded to consider at step four whether
21 Plaintiff's residual functional capacity—what Plaintiff could do despite his

---

[2] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

[3] To receive disability insurance benefits, a claimant has to prove he was disabled before his date last insured. 20 C.F.R. § 404.131. Supplemental security income is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335.

limitations—is such that he would have been able to perform his prior work either through the date last insured, or since the application date. (AR 18, 25.) In both instances, the ALJ credited the vocational expert's testimony that an individual like Plaintiff would be able to perform his past relevant work as an assistant manager as that job is generally performed. In the alternative, the ALJ credited the vocational expert's testimony that an individual like Plaintiff could perform other jobs in the national economy. (AR 20, 25.) The ALJ thus found Plaintiff to be not disabled and denied his claims for disability insurance benefits (AR 22) and for supplemental security income payments (AR 27.)

The Appeals Council denied review of the ALJ's decision. (AR 1-5.)

Dissatisfied with the agency's resolution of his claims, Plaintiff filed a Complaint in this Court.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See e v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.*

*Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

## III.  DISCUSSION

None of Plaintiff's arguments pertain to the period ending December 31, 2014—Plaintiff's date last insured for disability insurance benefits. Because the ALJ reasonably concluded that Plaintiff did not prove that he was disabled before his date last insured, and Plaintiff does not meaningfully challenge that determination here, the ALJ's decision finding that Plaintiff was not entitled to disability insurance benefits is **affirmed**.

Plaintiff raises two issues concerning the ALJ's denial of his claim for supplemental security income payments: (1) the ALJ erred when he failed to consider the opinions of Plaintiff's treating ophthalmologists, Dr. Nguyen and Dr. Vong; and (2) the ALJ failed to properly address the severity of Plaintiff's vision impairments and bilateral knee impairment at step two. (Pl.'s Br. at 2, 3.) For the reasons set forth below, the Court determines that the ALJ's decision must be reversed.

**A.  Medical Opinions**

Under governing regulations, an ALJ is required to articulate how persuasive he finds the medical opinions in a claimant's record. 20 C.F.R. § 416.920c(b). "Medical opinion" is a term of art; it is defined as "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). As to any medical opinion in the record, the ALJ must explain how he evaluated the "supportability" and the "consistency" of the opinion and must consider an enumerated list of other factors. 20 C.F.R. § 416.920c(b)(2). On review in this Court, an ALJ's reasons for

1 rejecting a medical opinion must be supported by substantial evidence. *Woods*
2 *v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

3       Not all medical records are "medical opinions," however. Records that
4 reflect only "judgments about the nature and severity" of impairments, "medical
5 history, clinical findings, diagnosis, treatment prescribed with response, or
6 prognosis" are not medical opinions; they are "other medical evidence." 20 C.F.R.
7 § 419.913(a)(3). The distinction matters; while "medical opinions" are subject to
8 specific explanation requirements described in the preceding paragraph, "other
9 medical evidence" is not subject to the same requirement. *See Katherine M. v.*
10 *Kijakazi*, No. 21-CV-01207-JST, 2022 WL 19975282, at *6 (N.D. Cal. Nov. 23,
11 2022) ("other medical evidence" need only be discussed if it constitutes
12 "significant probative evidence").

13       Plaintiff argues that Dr. Nguyen and Dr. Vong's recommendations are
14 "medical opinions," and that the ALJ's failure to mention them, let alone to
15 evaluate them under the criteria set out in 20 C.F.R. § 416.920c(b)(2), requires
16 reversal. The Court agrees.

17       In October 2021, Plaintiff saw Dr. Nguyen for a follow-up eye examination.
18 (AR 1575-77.) Dr. Nguyen noted that Plaintiff had a history of Bell's palsy since
19 2018. Dr. Nguyen noted his diagnoses as diplopia (double vision) and left eyelid
20 ptosis (drooping of the upper lid) from synkinesis (spasms). (AR 1575.) He has
21 double vision that "cannot fuse with prism," but he "is not a surgical candidate."
22 (AR 1575, 1576.) He noted Plaintiff's left eye lagophthalmos (incomplete or
23 abnormal closure of the eyelids). (AR 1452.) Dr. Nguyen suggested that Plaintiff
24 "can patch the left eye closed to eliminate the second image" so that he can drive
25 again, but said he should avoid driving at night or long distances. (AR 1576.) Dr.
26 Nguyen also noted that it might take time for Plaintiff "to readjust with the lack
27 of depth perception" that would result from patching his left eye closed. (AR
28

1577.)

The following month, Dr. Vong likewise recommended that Plaintiff patch his left eye closed "to eliminate the second image" so that he can drive again. (AR 1582.) She, too, noted that it might take time for Plaintiff to adjust to the lack of depth perception, and that Plaintiff should avoid driving at night or long distances. (AR 1582.)

The ALJ did not mention or evaluate Dr. Nguyen's and Dr. Vong's reports. Defendant does not argue otherwise. Instead, she makes two arguments that the ALJ's failure to discuss the two doctors' findings is not error.

First, Defendant argues that Drs. Nguyen and Dr. Vong's recommendations are not "medical opinions," and that the ALJ thus had no obligation to address them. (Def't's Br. at 2.) The Court finds this argument unavailing. Both providers describe what Plaintiff can do despite his impairments, that is, he can drive so long as he patches one eye. And both describe areas in which Plaintiff is limited, the ability to drive at night or for long distances, and also noted that he may require some time for adjustment to driving with one eye patched. These opinions bear on Plaintiff's "ability to perform physical demands of work activity" and his "ability to perform other demands of work, such as seeing." 20 C.F.R. § 416.913(a)(2)(i)(B), (C). Thus, the doctors' recommendations provide enough detail to constitute an opinion on the effect of Plaintiff's vision problems and what Plaintiff can still do despite his visual impairments.

Second, Defendant argues that Drs. Nguyen and Vong's recommendations did not meet the 12-month duration requirement for an impairment. (Def't's Br. at 2-3.) Under the Social Security Act, a claimant must establish that he suffers from a medically determinable impairment that "has lasted or can expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A),

(5)(A). The doctors did not say how long Plaintiff would have to use an eyepatch or limit his driving. As such, Defendant argues, their opinions can at most establish that Plaintiff's impairments were limiting for the period covered by those records, from October 2021 until November 2021. Defendant thus argues for affirmance, because that time frame is not enough to meet the statute's durational requirement. (Def't's Br. at 3 (citing AR 1576-77, 1582).)

The Court disagrees. An ALJ must ultimately find that a claimant's *impairment* lasted at least a year. But a medical opinion might contribute to that finding even if it only speaks to a claimant's impairment during a narrower time range. Consistent with that fact, the regulation requires ALJs to address all medical opinions, not only those medical opinions that explicitly prescribe a limitation that will last more than a year. Here, the ALJ was not relieved of his obligation to discuss the two doctors' recommendation because they did not express a view on how long Plaintiff's driving would be limited; the plain text of the regulation precludes any such argument.

If Defendant's argument is that the failure to address the impairments is harmless because the durational requirement is not met, that argument, too, is wrong: there is ample evidence from which an ALJ could find that Plaintiff's vision issues meet the durational requirement.

In December 2017, Plaintiff was noted to have facial droop; he reported blurry vision in his left eye, left eye tearing, and difficulty blinking his left eye. (AR 509.) His diagnosis of left Bell's palsy was noted, and he was instructed to patch his eye at night. (AR 510.) In January 2018, Plaintiff was noted to have incomplete closure of the left eyelid. (AR 503-06.) In March 2018, Plaintiff reported patching his left eye at night and said that he limits his driving as recommended. (AR 499.) In April 2018, Plaintiff complained to his treating provider of difficulty closing his left eye and blurred vision in the left eye. (AR

7

493-95.) He was referred to ophthalmology and neurology specialists. (AR 495.)

In May 2018, Plaintiff underwent an ophthalmology workup. He complained that he was not able to close his left eye, and the left eye is blurred and irritated. The possibility of "temporary tarsorrhaphy" (the joining of the upper and lower lids so as to partially or completely close to eye) of the left eye was discussed, and it appeared the plan was to schedule the procedure. (AR 492.)

In September 2019, Plaintiff was noted to have "significant synkinesis with smiling, near complete eye closure on the left with facial movement; brow ptosis with significant muscle tension; and slow, but complete eye closure on the left. He received a Botox injection to decrease tightness around the left eye. (AR 421.)

In February 2020, the provider again noted a history of Bell's palsy. Plaintiff reported tightness especially around his left eye, but said that the condition had improved with Botox (AR 402-03.) In July 2020, Plaintiff complained of left eye pain and burning. (AR 371.) In August 2020, Plaintiff complained to Dr. Vong of pain and occasional double vision, as well as dry eye from left Bell's palsy, and tearing. It was noted that Plaintiff had originally been offered treatment for the incomplete eyelid closure in the form of surgery—a "temporary tarsorrhaphy in 2018"—but had "declined at that time" (AR 360.)

Those medical records were followed by the Fall 2021 reports of Dr. Nguyen and Dr. Vong described above, and Plaintiff's testimony in December 2021, which confirmed that his vision continued to be a problem and that he continued to wear a patch on his left eye. (AR 50.)

In sum, the record reflects that Plaintiff's vision-related issues have lasted more than 12 months. As such, it is irrelevant that Dr. Nguyen's and Dr. Vong's reports do not reference how long Plaintiff would be required to patch his eye; there is other evidence in the record that could support a finding of the 12-month duration requirement.

Finally, Defendant argues that any error is harmless because Plaintiff does not identify specific limitations that should have been included in the residual functional capacity. (Def't's Br. at 3-4.) The restrictions that could be warranted based on Dr. Nguyen and Dr. Vong's opinions are evident: they relate to driving and, potentially, to tasks that require depth perception. Such restrictions are not uncommon. *See, e.g., Mary G. v. Kijakazi*, No. CV 23-01972-DFM, 2023 WL 6304853, at *1 (C.D. Cal. Sept. 27, 2023) (reciting residual functional capacity of a claimant as restricting ability to "perform tasks requiring good depth perception" and to "drive motor vehicles"); *Jimenez Rodriguez v. Saul*, No. 19CV805-CAB-KSC, 2019 WL 7048774, at *1 (S.D. Cal. Dec. 23, 2019) (reciting residual functional capacity as including limitations of driving and tasks requiring depth perception). Had the ALJ assessed such limitations to be appropriate for inclusion in Plaintiff's residual functional capacity, it could have affected the hypotheticals posed to the vocational expert, and the range of jobs that the vocational expert would have found appropriate for Plaintiff. As such, the Court cannot say that the error is harmless. *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 ("[A]n RFC that fails to take into account a claimant's limitations is defective"); *Watson v. Astrue*, 2010 WL 4269545, *5 (C.D. Cal. Oct. 22, 2010) (finding the ALJ's RFC determination and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider a doctor's findings).

Remand is required on this basis.

**B.   Step Two Analysis of Plaintiff's Vision Issues and Knee Pain**

Plaintiff raises another point of error. He contends that the ALJ did not properly address his vision and knee pain at step two. As to his vision issues, he argues that the ALJ did not address them at all. And with respect to Plaintiff's

bilateral knee pain, the ALJ found it not to be a medically determinable impairment because it is not substantiated by objective or diagnostic findings. (Pl.'s Br. at 3; AR 22.)

### 1. Legal Framework

At step two of the five-step sequential inquiry, the Commissioner must decide whether the claimant has medically determinable impairments and whether those impairments are severe or nonsevere. 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment must be established by objective medical evidence, including signs, laboratory findings, or both. 20. C.F.R. §§ 404.1502(f), 404.1502(f). An impairment or combination of impairments is nonsevere only if it is "a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citation omitted). The inquiry at step two is not a high barrier; it is "'a de minimis screening device" designed to "dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1290).

### 2. Plaintiff's Vision Impairments

The ALJ's decision did not address Plaintiff's vision-related impairment at all in step two. He did address Plaintiff's Bell's palsy, finding it to be medically determinable impairment that caused "no more than slight abnormalities." As such, he concluded that Plaintiff's Bell's palsy is nonsevere.

Plaintiff claims this was error, and the Court agrees. The Court will give the ALJ the benefit of the doubt that his discussion of Bell's palsy was intended to include the vision issues that are associated with that impairment. Even so, the ALJ's treatment of the subject is too conclusory to withstand scrutiny. The ALJ opined that Plaintiff's Bell's palsy (which the ALJ lumped together with two other unrelated conditions) is not severe because the clinical records reflect

"non-existent, mild, or improved symptoms and effective courses of treatment," and fail to demonstrate more than minimal effect on Plaintiff's ability to work. (AR 22.) But that recitation largely restates the definition; it does not explain why the ALJ believed Plaintiff's vision issues did not meet the threshold for a severe impairment. *Dudics v. Astrue*, No. C10-5501-TSZ-BAT, 2011 WL 884167, at *2 (W.D. Wash. Feb. 16, 2011) (step two analysis that merely restates the definition of not severe does not comply with the ALJ's obligation to explain and make factual findings supporting his conclusion).

That failure to explain precludes this Court from conducting its review. An ALJ "may not ignore significant probative evidence that bears on the disability analysis." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022). Here, as set out above, there was a body of medical records, two medical opinions, and Plaintiff's own testimony describing his vision issues and the impact those conditions had on his daily life. From the ALJ's terse discussion, the Court cannot rule out that the ALJ was unaware of those records. His citations do not reference any of the vision-related records or opinions discussed above. (AR 22.) Moreover, the ALJ's broad description (that the conditions caused either no symptoms or mild symptoms or symptoms that were improved with treatment) leaves this Court unable to confirm that the ALJ's actual reason for rejecting *this* impairment is supported by substantial evidence. In short, the ALJ's explanation here is not sufficient to assure the Court that he considered and had a good reason for finding Plaintiff's vision issues non-severe.

Error at step two can be harmless, and Defendant argues it was harmless here. It is true that the ALJ *said* that he considered all of Plaintiff's impairments in assessing Plaintiff's residual functional capacity, including those he deemed not severe at step two. (AR 22.) Had the ALJ done so in any way that the Court could credit, the error may well have been harmless. But in

11

fact, nothing in the ALJ's analysis after step two even acknowledged Plaintiff Bell's palsy or vision-related issues—let alone explained why such conditions did not figure into his assessment of Plaintiff's residual functional capacity.

As above, Plaintiff's visual impairments—including double vision, blurring, tearing, and lack of depth perception when patched—may well have more than a minimal effect on his ability to work. The ALJ's analysis of Plaintiff's residual functional capacity is thus incomplete because it neither included any visual limitations in Plaintiff's residual functional capacity nor explained why such limitations were not properly included in that assessment. Such error is not harmless for the same reason that the ALJ's failure to consider the medical opinions of Dr. Nguyen and Dr. Vong was not harmless.

### 3. Plaintiff's Knee Impairments

Plaintiff also argues that the ALJ erred in handling his knee pain at step two. Plaintiff testified that his inability to work was due in part to problems with his knees. He said that he can stand for approximately 30 minutes. (AR 53.) The ALJ acknowledged that the record reflected Plaintiff's complaints of knee pain, but pointed out that his x-rays were normal and that there were no objective or diagnostic findings to substantiate the alleged knee pain. (AR 22). The ALJ thus concluded that Plaintiff had not established that his knee pain was a medically determinable impairment. (AR 22.)

Plaintiff contends that there is "ample evidence" to show that his bilateral knee pain is a medically determinable severe impairment. (Pl.'s Br. at 6.) Among other records, he points to the record of a January 2019 examination, during which Plaintiff presented with bilateral knee pain. Plaintiff told the doctor that pain medication had provided no relief, but he had not tried injections. The examination reflected bilateral knee tenderness, moderate pain with range of motion, positive bounce test, positive grind test, tenderness to palpation on the

12

1  medial and lateral patellar facet, and a spastic and antalgic gait. (AR 458-60.)
2  The ALJ referenced other knee-related records, but not this one, so it is unclear
3  why the ALJ believed it did not count as an objective or diagnostic finding
4  substantiating Plaintiff's knee pain.

5  Defendant acknowledges that that record's description of positive grind
6  and bounce tests and of spastic and antalgic gait *might* qualify as medically
7  determinable signs—emphasis in Defendant's Brief—but argues that that alone
8  would not suffice because the record does not reflect that the doctor used those
9  findings to diagnose Plaintiff's knee pain. (Def't's Br. at 8.) The ALJ did not give
10 the lack of diagnosis in that document as a basis for finding no medically
11 determinable impairment; he found there were *no* objective findings in the
12 record. (AR 22.) The Court may not affirm for a reason that the ALJ did not give.
13 *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citation omitted).

14 Moreover, while the record does say that the etiology of the knee pain is
15 "unclear," it continues: "Possible pain from early [degenerative joint disease]";
16 "Labs to rule out underlying/inflammatory pathology." (AR 460.) The record may
17 not reflect a definitive diagnosis—but the Ninth Circuit has not clearly required
18 a definitive diagnosis either. *See Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653,
19 655 (9th Cir. 2011) (ALJ relied on mental evaluations "diagnosing Ortiz with
20 depressive and anxiety disorders but not ruling out either a learning disability
21 or borderline intellectual functioning. This is not the 'total absence of objective
22 evidence of severe medical impairment' that would permit us to affirm 'a finding
23 of no disability at step two.'"). It certainly was enough of a diagnosis for
24 Plaintiff's doctors to move forward and begin treating his knee pain. (*See, e.g.*,
25 AR 427 (treating knee pain with bilateral steroid injections); AR 396 (applying
26 patella stabilizing knee braces).)

27 Because a remand is required for review of Plaintiff's vision-related
28

13

issues, the Court need not decide whether the ALJ's treatment of Plaintiff's knee pain would warrant remand if it were the only issue presented. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."). Given the closeness of the above question, however, the ALJ may want to re-review the finding that there is no objective or diagnostic finding relating to Plaintiff's knee pain.

## IV.  REMAND FOR FURTHER PROCEEDINGS

Remand is appropriate, as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## V.  CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **AFFIRMED** with respect to Plaintiff's claim for disability insurance benefits;

(2) the decision of the Commissioner with respect to Plaintiff's claim for Supplemental Security Income payments is **REVERSED** and this matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g)

for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(3) Judgment be entered affirming in part and reversing in part.

DATED: November 15, 2023

_____
BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE